NOT DESIGNATED FOR PUBLICATION

No. 127,941

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEPHEN WAYNE COX,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Leavenworth District Court; CLINTON LEE, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PICKERING, J.:  Stephen Wayne Cox appeals from the district court's denial of his K.S.A. 60-1507 motion alleging ineffective assistance of counsel. Cox also claims the district court erred by not allowing him to amend his K.S.A. 60-1507 motion. After our review, we find substantial competent evidence supports its finding that counsel was not ineffective, and the district court did not err in denying Cox's request to amend his motion. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This criminal case began in Leavenworth when Cox was driving his pickup truck and following Michael Morgan in another vehicle. For reasons unclear in the record, Cox threw a large metal item at Morgan's vehicle, causing Morgan to get out of his vehicle to retrieve the item. Once Morgan had exited his vehicle, Cox struck Morgan with his truck. As a result of being hit by the truck, Morgan sustained serious injuries, including a broken leg and several broken ribs.

In May 2016, the State charged Cox with aggravated battery, a severity level 4 person felony; aggravated assault, a severity level 7 person felony; and criminal damage to property, a class B nonperson misdemeanor.

On May 26, 2017, the State initially offered plea terms to Cox's trial counsel that included: (1) a plea to a reduced severity level 5 reckless aggravated battery, great bodily harm, including an agreement to a durational departure prison sentence of 100 months; (2) dismissal of the aggravated assault and criminal damage charges; (3) termination of Cox's misdemeanor cases, for which he was serving a two-year jail sentence; and (4) an agreement not to file a fleeing/eluding case that it was holding on to.

Several continuances were granted before March 2019, when the State agreed to dismiss the aggravated assault and criminal damage to property charges and allow open sentencing in exchange for Cox pleading guilty to aggravated battery. The district court imposed a 162-month prison sentence.

In June 2019, Cox filed a postsentence motion to withdraw his plea, alleging that trial counsel pressured him into pleading. In January 2020, Cox filed a motion challenging his criminal history score. In October 2020, Cox filed a motion asking the sentencing judge to recuse himself.

2

Cox also directly appealed and alleged that (1) the district court erred when it denied his presentencing motion to withdraw plea; (2) the district court erred when it denied his motion to challenge his criminal history score; and (3) the district court erred when it denied Cox's request for the presiding judge to recuse himself. Another panel of this court affirmed the district court. *State v. Cox*, No. 123,587, 2021 WL 5500044, at *5 (Kan. App. 2021) (unpublished opinion). The mandate issued on September 13, 2022.

In August 2023, Cox timely filed a K.S.A. 60-1507 motion, alleging that trial counsel was ineffective in plea negotiations. Cox's motion only claimed that trial counsel did not communicate the May 2017 plea offer and Cox would have accepted the offer had it been communicated. Based on Cox's claims, the district court held an evidentiary hearing.

At the hearing, Cox called the originally assigned prosecutor to testify. The prosecutor testified how he had sent the initial May 2017 offer to trial counsel and could not recall if Cox rejected the offer. But the prosecutor did remember that Cox wanted probation as the outcome of the case. Eventually, the prosecutor left the Leavenworth County Attorney's Office, and a new prosecutor was assigned to the case.

Cox testified on his own behalf and stated that trial counsel only visited him once in prison and did not discuss a plea offer at the time. He testified that trial counsel did not communicate a plea offer recommending a 100-month durational departure. Cox also did not recall meeting with trial counsel in May 2017. When asked if Cox would have accepted the 100-month plea offer even though it called for time in custody, he answered yes.

On cross-examination, the State asked Cox about other pleas he attempted to withdraw from because he thought he would get probation. In particular, the State

questioned Cox about whether his goal was probation, and he answered yes. On redirect, Cox said he would have accepted a plea if he was told probation was unlikely.

On Cox's recross-examination, he said that trial counsel never discussed any plea, despite trial counsel's notes and notations talking about a plea. Cox explained that trial counsel told him to continue fighting and he would receive community corrections. Cox testified that the morning of trial was the only time trial counsel discussed a plea and told him to expect community corrections to supervise his probation.

Cox's trial counsel also testified. When asked if he discussed the 100-month sentence with Cox, trial counsel testified multiple times that he had. Trial counsel testified to corresponding with Cox in April, June, July, and September of 2017. Trial counsel recalled that Cox wanted him to do "whatever [trial counsel] needed to do . . . to keep [Cox] out of the penitentiary, no jail time, no prison time." Cox asked trial counsel why his notes said he met with Cox on two occasions that were not contained in the sheriff's records. Trial counsel told the court that sometimes the sheriff's department would not check him in because they knew him and he could only tell the court what his notes said. On redirect, the State asked trial counsel if he talked to Cox about the 100-month plea offer, and he said, "I'm sure that he and I talked about it. But I want to be fair to him. Do I know where I was standing; where he was standing; when I said it? No. So—but do I think I told him? Absolutely."

On recross-examination, Cox's habeas counsel asked trial counsel if he told Cox that probation was unlikely. Trial counsel stated, "I give him all of these options. I tell him what his criminal history score is. I tell him this is what you're looking at. But I don't have a crystal ball. And I can't tell what the future's going to bring. But he didn't want anything but probation." Habeas counsel questioned whether trial counsel informed Cox that his probation expectations were unreasonable, and trial counsel responded, "He's a grown man. And I told him that. You could look and see the same things I'm looking at.

4

You know that judge and you know what, potentially, could happen. It's not my decision. It's your decision. That's what I told him." Habeas counsel asked if trial counsel explained the risks of each option or simply told the client what the option was. Trial counsel answered:

> "No. I go over it. You're looking at this much time. If you—if we don't prevail on the departure motions—durational/dispositional. And I explained to him what those were, and I showed him what substantial and compelling reasons were. Which I thought we had. Okay? A lot of family letters [sic] are—wrote him a letter. Have all your family send letters. Let's talk about your kids. Let's get ready."

Trial counsel explained the likelihood of probation, stating:

> "I thought it was going to be an uphill battle. I don't think I used that word with him. I, probably, said it's gonna be tougher than you know what. But this is what you want. Let's give it a shot. It's State versus Cox. He runs whether or not he goes to trial or takes the plea. I don't run that."

The prosecutor who took over the case also testified. She offered 114 months' imprisonment in exchange for Cox pleading guilty to aggravated battery, or Cox could plead as charged "with an open to argue sentence." The prosecutor stated that Cox rejected this second plea offer because he would accept "[p]robation . . . That was the only thing." The prosecutor testified that it was the State's policy to note if a defendant accepted or rejected a plea offer, and the State's notes on Cox did not indicate he had rejected the 100-month offer. The prosecutor added that she implicitly understood that setting the case for trial was a rejection of the State's initial 100-month plea offer.

After testimony, Cox asked the district court if it "wanted further argument, in excess of the pleadings that have already been filed." The district court replied:

5

"THE COURT: I would not shun those. I'm not going to order the parties to prepare additional argument. But if you want to put something in writing, I will certainly hold off on making a decision until I get your pleading and have had a time—chance to review it. Do you wish to put something—some supplement argument on the record or in the file?

"[HABEAS COUNSEL]: Yeah. I'm sorry.

"THE COURT: All right, No, that's fine. How long will it take you[?]

"[HABEAS COUNSEL]: I can get something—and Friday of next week will work.

. . . .

"THE COURT: [the State], do you want to use that same date to submit any additional argument? Or do you want an opportunity to respond? In which case, I'll give you a week after that to put something—

"[THE STATE]: A week after would be fine, Your Honor.

"THE COURT: All right. So that would make it March 1st. And I will not render a decision until I have seen both sides' supplemental argument. All right. Anything else at this time?"

In Cox's written closing argument, he asserted a new basis for the district court to find his trial counsel ineffective: He alleged that trial counsel was ineffective because counsel did not advise Cox that probation was "not realistic under the facts and circumstances."

In the district court's written findings, it found that Cox and trial counsel gave conflicting testimony regarding whether trial counsel discussed the first plea offer with

6

Cox. The district court found that trial counsel informed Cox of the first plea offer, stating:

> "[Trial counsel] was confident he did because having represented criminal defendants for over 47 years it was his standard practice to convey all plea offers to his clients. On the other hand, Cox has nothing to lose having already rolled the dice and lost when he was not granted probation."

The district also found trial counsel's "testimony more credible than Cox's" because Cox could not recall trial counsel informing him of the second plea offer when evidence existed to the contrary.

The district court found that Cox failed to establish prejudice because the evidence showed Cox was only interested in probation and rejected offers that included lesser prison time. And the first plea offer would have resulted in a presumptive prison sentence greater than the agreed upon 100 months and the trial court would have had to grant a downward durational departure for Cox to receive that sentence. The district court disagreed with Cox's argument that, because the State and Cox agreed upon the departure, the trial court would have granted it.

The district court dismissed Cox's argument on whether trial counsel advised him about the chances of probation because: (1) Cox never moved for leave to supplement his motion; (2) the argument was untimely; and (3) even if Cox's argument was not time barred, it failed on the merits because trial counsel explained to Cox that they needed to establish substantial and compelling reasons for a departure. The court then denied Cox's K.S.A. 60-1507 motion.

Cox appealed.

ANALYSIS

I.  *The District Court Did Not Err When It Did Not Consider Cox's Newly Asserted Argument After the Evidentiary Hearing*

In his original K.S.A. 60-1507 motion, Cox argued that trial counsel performed deficiently because he did not advise Cox about the May 2017 plea offer. In the supplemental arguments filed after the evidentiary hearing, he also claimed that trial counsel should have given him more advice on whether to accept or reject the plea offers. On appeal, Cox now alleges that trial counsel should have advised Cox to accept the plea because "probation in this case was so unlikely that an offer from the State for an offense with a lower severity level was the better option."

The State contends that Cox's claim that the new argument is an amended K.S.A. 60-1507 motion is procedurally barred because he never argued to the district court that the amended motion related back to his original motion or, if it did not relate back, that it would result in a manifest injustice. The State also alleges that the amended motion was a successive motion, and the district court could have denied it as such. The State claims Cox's argument lacks merit because, contrary to Cox's claim, trial counsel did not state "that he never advised clients about plea offers." Rather, he stated that he explained potential outcomes and allowed the defendant to make his or her choice.

*Standard of Review*

"An amendment to a motion for relief under K.S.A. 60-1507 that asserts a new ground for relief which is supported by facts that differ in both time and type from those grounds set forth in the original motion does not relate back to the date of the original motion, so as to circumvent the 1-year limitation of K.S.A. 60-1507(f)(1)." *Pabst v. State*, 287 Kan. 1, Syl. ¶ 7, 192. P.3d 630 (2008).

"If an amendment to a K.S.A. 60-1507 motion *is permitted*, the timeliness of amended claims is subject to the *Pabst* time and type test enunciated in K.S.A 60-215(c), *i.e.*, relation back is permitted only if the new claims arose 'out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" (Emphasis added.) *Thompson v. State*, 293 Kan. 704, 714, 270 P.3d 1089 (2011).

The one-year time limitation for bringing an action under K.S.A. 60-1507(f)(1) "may be extended by the court only to prevent a manifest injustice." K.S.A. 60-1507(f)(2). "'[A] defendant who files a motion under K.S.A. 60-1507 outside the 1-year time limitation in K.S.A. 60-1507(f) and fails to assert manifest injustice is procedurally barred from maintaining the action.'" *State v. Roberts*, 310 Kan. 5, 13, 444 P.3d 982 (2019).

Citing *Mayle v. Felix*, 545 U.S. 644, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005), Cox claims that the district court erred when it found that the amended K.S.A. 60-1507 motion did not relate back because, Cox alleges, the amended motion derived from the same "'common core of operative facts'" as the original motion. Cox argues that, when the district court allowed the parties to make additional written arguments, it granted "leave" to amend. Cox alleges that, even if the new allegations do not relate back, we should not enforce the one-year deadline because it would result in a manifest injustice.

The State replies that the district court did not grant leave to Cox to amend; it allowed Cox to make written closing arguments.

K.S.A. 60-215 controls amendments to a K.S.A. 60-1507 motion. *Thompson*, 293 Kan. at 710. Under K.S.A. 60-215(a)(2), if a party can no longer amend a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent, or the court's leave."

We agree with the State. The district court did not grant Cox leave to amend. Instead, it allowed both parties to make written closing arguments. The district court stated:

> "I'm not going to order the parties to prepare additional argument. But if you want to put something in writing, I will certainly hold off on making a decision until I get your pleading and have had a time—chance to review it. Do you wish to put something—some *supplement argumen*t on the record or in the file?" (Emphasis added.)

The district court reiterated this distinction in its dismissal of Cox's K.S.A. 60-1507 motion when it stated: "At the outset, it must be noted that this issue was not included in Cox's original habeas motion, nor did Cox ever file a motion seeking leave to supplement his motion."

Cox initially asked the district court if it wanted additional arguments to the oral arguments presented. Cox did not ask the district court for leave to amend and add a claim. And the district court's finding in its dismissal of the new claim shows that the district court only intended for Cox to supplement or make other arguments to those presented during the K.S.A. 60-1507 evidentiary hearing. The district court did not grant Cox leave to amend, so the district court did not err when it did not consider Cox's amendment.

II.      *The District Court Did Not Err When It Denied Cox's K.S.A. 60-1507 Motion*

*Standard of review*

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2026 Kan. S. Ct. R. 242). An appellate court reviews the

court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Peters*, 319 Kan. 492, 499, 555 P.3d 1134 (2024).

When a defendant files a postsentence motion to withdraw a plea alleging ineffective assistance of counsel, the constitutional test for ineffective assistance must be met to demonstrate manifest injustice. In assessing prejudice in this context, courts look to whether there was a reasonable probability that, but for counsel's errors, the defendant would have insisted on going to trial rather than entering the plea. *State v. Shields*, 315 Kan. 131, 141, 504 P.3d 1061 (2022).

"Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different.

"To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort to be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy.

"Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citations omitted.]" *State v. James*, 319 Kan. 178, 184-85, 553 P.3d 308 (2024).

*Substantial competent evidence supported the district court's finding that trial counsel did not perform deficiently.*

Cox contends that the district court erred when it found trial counsel was effective because no evidence in the record supported a finding that trial counsel informed Cox of the State's initial plea offer. The State claims that substantial competent evidence supported the district court's finding that trial counsel informed Cox of the first plea's terms because, at the evidentiary hearing, trial counsel testified multiple times that he had discussed the first plea with Cox.

Trial counsel testified repeatedly that he communicated with Cox on all plea offers. Although trial counsel could not recall exactly when or where he discussed the first plea offer with Cox, when asked if he told Cox about the 100-months offer, trial counsel said, "Absolutely." The district court found trial counsel more credible because: (1) trial counsel's standard practice was to communicate all offers; (2) Cox had "nothing to lose having already rolled the dice and lost when he was not granted probation"; and (3) Cox continuously denied trial counsel ever communicated any plea offers when trial counsel's notes and the prosecutor's file contained evidence that Cox rejected the State's second offer.

The district court did not find the evidence in the jail visitation logs to be compelling. Cox argued that the jail log entries did not show trial counsel visiting in May, June, or July 2017, so trial counsel did not inform him of the first plea offer. But the district court found trial counsel's testimony, about how jail staff did not always take the driver's license and attorney bar card when they knew an attorney, to be compelling. And trial counsel had written notes about jail visitations in April and July 2017 which were not reflected in the jail visitation's log.

Because both prosecutors could not recall the first offer being rejected, and trial counsel could not recall when he told Cox about the offer, Cox argues no evidence supports a finding that trial counsel communicated the first offer. But appellate courts "do not reweigh evidence, make credibility determinations, or resolve conflicts in evidence." *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018). Substantial competent evidence supported the district court's finding that trial counsel informed Cox about the State's initial plea offer and was not ineffective.

*Substantial competent evidence supported the district court's finding that Cox failed to establish prejudice.*

Cox argues that the district court erred when it found that, even if trial counsel was deficient, it did not prejudice Cox. He contends that the amended motion aids the prejudice prong analysis because it is necessary to examine whether trial counsel provided effective assistance for the plea itself.

The State alleges that the district court correctly found that Cox cannot establish prejudice because the record shows Cox would have rejected any plea offer that did not include probation as a possibility.

13

> "In the context of ineffective assistance of counsel leading to a plea agreement, 'prejudice means a reasonable probability that, but for the deficient performance, the defendant would have insisted on going to trial instead of entering the plea.' '"A reasonable probability is a probability sufficient to undermine confidence in the outcome."' [Citations omitted.]" *State v. Grant*, 320 Kan. 835, 839, 572 P.3d 788 (2025).

A defendant "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Missouri v. Frye*, 566 U.S. 134, 147, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012).

Substantial competent evidence supported the district court's finding that Cox would not have accepted the 100-months' imprisonment offer. Both prosecutors testified that Cox would only accept a plea containing probation. Trial counsel testified that he discussed how unlikely probation was, and, as required by law, also explained that he told Cox it was his choice to make. The district court found it compelling that Cox rejected the State's 114-months offer because he wanted probation, so Cox would not have accepted the 100-months offer, which was only 14 months less.

The district court found that the plea offer of 100 months could have resulted in a presumptive prison sentence greater than 100 months because it depended on the trial court granting a downward durational departure. Cox insisted on the State recommending probation or his ability to argue for probation as a plea term. Cox did not demonstrate a reasonable probability that he would have insisted on going to trial rather than entering the plea because the plea entered was the only plea containing the term he insisted on. Cox failed to establish prejudice.

Affirmed.

14